UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

SASHA GEORGE,

                                                           Plaintiff,    FIRST AMENDED
COMPLAINT AND
                -against-                           JURY DEMAND

CITY OF NEW YORK, SERGEANT RALPH CILENTO,   Docket No. 10CV4889(LB)
DETECTIVE EDWIN DIAZ, DETECTIVE JOHN
WALKER, DETECTIVE RICHARD CALABRO,
DETECTIVE LOUIS CAPUTO, DETECTIVE          ECF CASE
NATALYA EDELSHTEYN, OFFICER SCOTT
MATEYASCHUK, AND OFFICER BENJAMIN
COLECCHIA, DETECTIVE NICHOLAS MASSAB,
DETECTIVE GERARD VALDIVIA, DETECTIVE
PATRICK COLEMAN,

                                                          Defendants.

------------------------------------------------------------------- x

Plaintiff Sasha George, by her attorneys, Stoll, Glickman & Bellina, LLP, for her complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of her Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a July 14, 2010 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiff to, among other things, excessive force.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further

1

relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9. THE CITY OF NEW YORK (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. SERGEANT RALPH CILENTO was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Sergeant Ralph Cilento was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Sergeant Ralph Cilento was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Sergeant Ralph Cilento was under the command of the ESS and is sued in his individual capacity.

11. DETECTIVE EDWIN DIAZ was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Detective Edwin Diaz was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Detective Edwin Diaz was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Detective Edwin Diaz was under the command of the ESS and is sued in his individual capacity.

12. DETECTIVE JOHN WALKER was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Detective John Walker was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them

3

arresting plaintiff without probable cause. Upon information and belief, defendant Detective John Walker was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Detective John Walker was under the command of the ESS and is sued in his individual capacity.

13. DETECTIVE RICHARD CALABRO was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Detective Richard Calabro was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Detective Richard Calabro was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Detective Richard Calabro was under the command of the ESS and is sued in his individual capacity.

14. DETECTIVE LOUIS CAPUTO was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Detective Louis Caputo was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Detective Louis Caputo was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Detective Louis Caputo was under the command of the ESS and is sued in his individual capacity.

15. DETECTIVE NATALYA EDELSHTEYN was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Detective Natalya Edelshteyn was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Detective Natalya Edelshteyn was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Detective Natalya Edelshteyn was under the command of the ESS and is sued in his individual capacity.

16. DEFENDANT OFFICER SCOTT MATEYASCHUK was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Officer Scott Mateyaschuk, was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Officer Scott Mateyaschuk was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Officer Scott Mateyaschuk was under the command of the ESS and is sued in his individual capacity.

17. DEFENDANT OFFICER BENJAMIN COLECCHIA was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times

relevant hereto, Defendant Officer Benjamin Colecchia was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Officer Benjamin Colecchia, was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Officer Benjamin Colecchia, was under the command of the ESS and is sued in his individual capacity.

18. DETECTIVE NICHOLAS MASSAB was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Detective Nicholas Massab was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Detective Nicholas Massab was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Detective Nicholas Massab was under the command of the ESS and is sued in his individual capacity.

19. DETECTIVE GERARD VALDIVIA was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Detective Gerard Valdivia was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and

belief, defendant Detective Gerard Valdivia was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Detective Gerard Valdivia was under the command of the ESS and is sued in his individual capacity.

20. DETECTIVE PATRICK COLEMAN was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Detective Patrick Coleman was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Detective Patrick Coleman, was under the command of the ESS command on the date of the incident. On information and belief, at all times relevant hereto, Defendant Detective Patrick Coleman, was under the command of the ESS and is sued in his individual capacity.

21. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

22. On July 14, 2010 at Autozone in Brooklyn, New York, plaintiff was involved in a robbery.

23. Defendants spotted plaintiff hiding on top of an A/C duct and forcefully pulled plaintiff down from about 10 feet in the air by a police officer.

24. Upon hitting the floor, the plaintiff was then punched twice in the face by the

7

same police officer, causing her to start bleeding.

25. Plaintiff, unarmed, was then hit in the mouth with the handle of the gun by the same police officer, breaking plaintiff's bottom tooth.

26. The same police officer then cuffed plaintiff's left arm. Plaintiff was holding her face with her right hand.

27. Another police officer then stepped on plaintiff's thigh putting all his weight on her, causing bruising and pain.

28. A third police officer commanded a police k-9 to attack plaintiff even though she was already restrained and on the ground.

29. The police k-9 began violently biting plaintiff's right arm and tearing away at her flesh.

30. All officers present, approximately ten, witnessed this attack and failed to call off the animal even though plaintiff was already cuffed, restrained, injured and unarmed.

31. Plaintiff was severely physically injured as a result of this misconduct.

32. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

33. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

34. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a. Violation of her rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b. Violation of her rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c. Violation of her New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d. Violation of her New York State Constitutional rights under Article 1, Section 6 to due process;

    e. Physical pain and suffering;

    f. Emotional trauma and suffering, including fear, emotional distress, and anxiety.

### FIRST CAUSE OF ACTION
### 42 U.S.C. §1983 – Excessive Force
### (Against Officer Defendants)

35. The above paragraphs are here incorporated by reference.

36. By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of her rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

37. In addition, the officer defendants conspired amongst themselves to deprive plaintiff of her constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

38. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of her constitutional rights secured by the United States Constitution.

39. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

40. The above paragraphs are here incorporated by reference.

41. The City has been alerted to the regular use of excessive force by its police officers, specifically with K-9 weapons, through lawsuits, (for example: Blake v. City of New York, et al, 05-CV-6652 (BSJ)(S.D.N.Y.)), civilian complaints, notices of claim, newspaper reports, but has nevertheless exhibited deliberate indifference to such excessive force; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million

in fiscal year 2009, compared to $80 million in 2008.[1] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2]

42. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[3] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[4] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[5] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

43. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is

---

[1] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[2] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

3 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[4] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[5] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

11

an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

44. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are

disproportionately responsible for New York City civil rights lawsuits.

45. The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

46. The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully use excessive force against New Yorkers during seizures, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

47. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD, including K-9 lawsuits. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

48. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

49. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York,

et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

50. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

51. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff's punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff's reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:   Tuesday, August 30, 2011
         Brooklyn, New York

TO:
City of New York
100 Church Street, 4th fl.
New York, NY 10007
On behalf of defendants:
City Of New York,
Sergeant Ralph Cilento,
Detective Edwin Diaz,
Detective John Walker,
Detective Richard Calabro,
Detective Louis Caputo,
Detective Natalya Edelshteyn,
Officer Scott Mateyaschuk,
Officer Benjamin Colecchia.

Detective Nicholas Massab
ESS6
333 65th Street
Brooklyn NY 11220

Detective Gerard Valdivia
ESS6
333 65th Street
Brooklyn NY 11220

Detective Patrick Coleman
ESS6
333 65th Street
Brooklyn NY 11220

Respectfully yours,

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com